O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY T. CASTRO,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　Defendant. | CASE NO. SA CV 10-01700 RZ<br><br>MEMORANDUM OPINION AND ORDER |

　　　　　Plaintiff Amy T. Castro contends that the Social Security Commissioner wrongly denied her claim for disability benefits. Plaintiff argues that the Administrative Law Judge ("ALJ") erred in discounting the credibility of her subjective complaints and in evaluating the opinion of a treating physician. The Court agrees, as explained below.

　　　　　An ALJ need not accept a claimant's statements as to subjective pain or symptoms, but can reject them for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 834 (1996). Plaintiff claims primarily that chronic pain and numbness in her bilateral upper extremities prevent her from performing activities such as typing, writing, and lifting. (AR 129, 402-09, 430-32.) She also testified that she has back pain and needs a cane for walking. (AR 431-32.) The ALJ provided four reasons for rejecting Plaintiff's credibility. The Court finds none of them to be clear and convincing.

1    First, the ALJ noted that Plaintiff's subjective complaints of back and shoulder
2 pain are not "objectively demonstrated by the clinical findings." (AR 29.) An ALJ may
3 consider whether the objective medical evidence supports the degree of limitation alleged
4 by a claimant, but this "cannot form the sole basis for discounting [subjective] testimony."
5 *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Because none of the ALJ's other
6 reasons legitimately impugn Plaintiff's credibility, this reason, assuming it is accurate, does
7 not suffice to support the ALJ's adverse credibility determination. Moreover, even if the
8 objective medical evidence does not support Plaintiff's back and shoulder complaints, this
9 reason does not detract from Plaintiff's testimony as to her significant hand and arm
10 problems.

11    Next, the ALJ found that, aside from the issues with her upper extremities,
12 Plaintiff's "musculoskeletal complaints have been treated conservatively, with modalities
13 including medications, epidural injections and ganglion sympathetic blocks." (AR 30.)
14 Even if the ALJ properly characterized Plaintiff's treatment as conservative, there is
15 additional evidence, submitted to the Appeals Council (AR 7), that undermines this
16 conclusion. Plaintiff's treating spinal/neurological surgeon wrote that Plaintiff has a
17 "longstanding progressively worsening history of low back pain radiating to her legs which
18 is now causing significant functional disability" and was a candidate for surgery.
19 (AR 380.) In addition, as with the ALJ's first reason for discounting Plaintiff's credibility,
20 conservative treatment of Plaintiff's back pain does not undermine her significant
21 complaints about her upper extremities.

22    Third, the ALJ found that Plaintiff "was not only inconsistent in her testimony
23 with respect to her hand pain, her other complaints to her various physicians have not been
24 consistent." (AR 30.) The ALJ does not specifically identify any inconsistencies in
25 Plaintiff's testimony about her hand pain. The ALJ asked Plaintiff many specific questions
26 about her pain symptoms, and Plaintiff's testimony spans more than seven pages of the
27 hearing transcript. (AR 402-10.) Although Plaintiff's testimony may not have been utterly
28 precise, she explained that her pain "varies," stating "[i]t's hard to tell. I just have pain all

the time." (AR 410.) Indeed, the Ninth Circuit has recognized that pain is a highly subjective phenomenon that is difficult to describe. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) (noting that the existence and degree of pain "is a completely subjective phenomenon," "ordinary language permits the expression of only the most rudimentary distinctions among levels of pain," and "such descriptions provide only a dim insight into the claimant's subjective experience of pain"). Plaintiff's allegedly inconsistent testimony about her experience of pain does not clearly and convincingly undermine her credibility.

        The ALJ provided more detail about her finding that Plaintiff's "other complaints to her various physicians have not been consistent." The ALJ noted that Plaintiff told Drs. Chan and Khan that she has experienced low back pain "for some 15 years at a pain level of 10 out of 10," but "[t]hese complaints were not recorded by physicians who had earlier examined [her]." In addition, the ALJ found that Plaintiff's ability to "maintain[] gainful employment to as late as 2001" undermined her claims of longstanding, extreme back pain. (AR 30.) The ALJ failed to note, however, that Plaintiff had complained of pain in her lower back area as early 1995. (AR 237-38.) A treating physician believed she had "a chronic herniated lumbar disc with radiculopathy" in February 1996, and an MRI revealed a "broad-based" disc protrusion and disc bulge. Around the same time, other physicians recommended a surgical discectomy and epidural injections. (AR 238.) In addition, many of Plaintiff's medical records relate to her workers' compensation claim for an injury to her wrists, possibly explaining Plaintiff's failure to mention her back pain more often. (*See, e.g.*, 201-11, 213-54, 262-71.) Moreover, Plaintiff's more recent medical records document "longstanding progressively worsening history of low back pain radiating to her legs which is now causing significant functional disability," with supporting objective evidence. (AR 380; *see* AR 377-79, 384-85.) In sum, the Court does not find that Plaintiff's inconsistent reports of her back pain clearly and convincingly undermine her credibility.

        Finally, the ALJ found that Plaintiff's daily activities "reflect[] significant functioning, even with her upper extremities." (AR 30.) The ALJ noted that Plaintiff

(1) "has custody and cares for her three young grandchildren," and "takes them to school and to doctors' appointments"; (2) "resided in a two story home for three years"; (3) "does yard work . . . , sorts laundry[,] and shops"; and (4) engaged in "self employment beginning in 2004 by picking up trash for her former landlord." (AR 30.) The Commissioner concedes that there is no evidence that Plaintiff does yard work, as Plaintiff testified that the property owner did the yard work. (AR 402.) The Court finds that none of the ALJ's other reasons clearly and convincingly undermine Plaintiff's credibility, as they do not contradict her allegations or demonstrate an ability to perform substantial gainful activity. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

First, although Plaintiff cares for her three grandchildren, there is no evidence that she does so to an extent that contradicts her allegations or demonstrates a capacity to perform substantial gainful activity. There is scant testimony about Plaintiff's grandchildren. Plaintiff stated that she takes them to doctors' appointments and drops them off and picks them up at school, and that she typically stays in bed or is "constantly in pain" in between doing so. She does not take her medications until after she takes the children to school because they make her sleepy. (AR 397-99.) In addition, the children help her perform tasks such as cutting coupons. (AR 401.) The limited information in the record about Plaintiff's care for her grandchildren does not clearly and convincingly undermine her credibility.

Next, the ALJ noted that Plaintiff resides in a two-story home. (AR 30.) Again, there is no evidence that permits this circumstance to malign Plaintiff's credibility. The only mention of stairs in Plaintiff's testimony appears to be a reference that her family members help her roll the laundry "down the stairs" after she sorts it. (AR 401.) The ALJ never asked Plaintiff if she experiences difficulty going up or down stairs. Moreover, Plaintiff never stated that her upper extremity or back impairments limit her ability to go up or down stairs. That Plaintiff lives in a two-story home is, on the record created, inconsequential to the ALJ's credibility determination.

1 Third, the ALJ found that Plaintiff's ability to sort laundry and shop
2 undermine her allegations. These observations do not undermine Plaintiff's allegations or
3 reflect an ability to perform substantial gainful activity. First, there is scant evidence about
4 Plaintiff's ability to do laundry. She stated she does not do her own laundry, but her
5 mother, sister, or daughter help her and roll it down the stairs after she "sort[s] it out." (AR
6 401.) This vague, brief testimony does not impugn Plaintiff's credibility. Similarly,
7 Plaintiff's testimony that she does grocery shopping "[o]nce a month if [she] could" does
8 not undermine her allegations. (AR 401.)

9 The final reason the ALJ provided for discounting Plaintiff's credibility was
10 that she engaged in "self employment beginning in 2004 by picking up trash for her former
11 landlord." (AR 30.) Plaintiff testified that her former landlord offered to pay her "$30 or
12 $60 a month" in exchange for picking up any trash she saw "lying around" on the property.
13 She did this for one year or less, and she testified that her "kids would help and pick up the
14 papers." (AR 411-12.) The ALJ's characterization of this arrangement as "self
15 employment" does not withstand scrutiny. This arrangement provides little, if any, insight
16 into Plaintiff's credibility or her ability to perform substantial gainful activity. Even if
17 Plaintiff was capable of occasionally picking up trash without her grandchildren's help,
18 "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v.*
19 *Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603).

20 In sum, the ALJ's credibility determination reflects an improper selective
21 consideration of the evidence. *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir.
22 2001) (an ALJ may not "selectively focus[ ] on . . . [evidence] which tend[s] to suggest
23 non-disability"); *Reddick*, 157 F.3d at 722–23 (ALJ erred by "by not fully accounting for
24 the context of materials or all parts of the testimony and reports. His paraphrasing of
25 record material is not entirely accurate regarding the content or tone of the record.").

26 Plaintiff's other argument is that the ALJ erred in rejecting the opinion of her
27 treating physician, Dr. Rottermann. Dr. Rottermann treated Plaintiff as part of her workers'
28 compensation claim, from January 9, 2003, through at least November 2006. (AR 243,

-5-

262.) Dr. Rottermann opined, among other things, that Plaintiff could perform no repetitive actions such as grasping or fine manipulation with either hand; "work on a regular and continuous basis [would] cause [Plaintiff's] condition to deteriorate"; Plaintiff could sit, stand and walk for only twenty minutes at a time; and Plaintiff's condition would cause her to miss three or more days of work per month. (AR 258-61.) An ALJ may discredit a treating physician's opinion by providing specific and legitimate reasons for doing so. *Batson v. Commissioner*, 359 F.3d 1190, 1194-95 (9th Cir. 2004). None of the ALJ's reasons for rejecting Dr. Rottermann's opinion meet this standard.

   The ALJ cited several reasons for discrediting Dr. Rottermann's opinion. First, the ALJ stated that his opinions were "conclusory," "without specifics [as] to [Plaintiff's] functional capability," "unsupported by objective findings," and "inconsistent with the opinions of examiners of record." (AR 30.) Dr. Rottermann extensively documented his multiple examinations of Plaintiff and reviewed and summarized Plaintiff's other medical records. (AR 213-54, 262-71.) The ALJ's characterization of his opinion as "conclusory" and "unsupported" fails to meet the level of specificity required to reject a treating physician's opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). There may be some validity to the ALJ's finding that Dr. Rottermann's opinion as to Plaintiff's sitting, standing, and walking limitations were unsupported, as Dr. Rottermann focused almost exclusively on Plaintiff's upper extremities. However, this reason does not detract from Dr. Rottermann's opinion as to Plaintiff's other symptoms, and the more recent evidence of Plaintiff's back problems may further inform the ALJ's assessment of Plaintiff's sitting, standing, and walking limitations.

Next, the ALJ stated that Dr. Rottermann's opinions were "seemingly predicated on [Plaintiff's] subjective complaints." (AR 30.) Because the ALJ's rejection of Plaintiff's credibility was improper, this reason does not suffice to undermine Dr. Rottermann's opinion. Moreover, Dr. Rottermann diagnosed Plaintiff with reflex sympathetic dystrophy and complex regional pain syndrome ("RSDS/CRPS"). (*E.g.,* AR 224, 264.) The medical expert admitted that the clinical findings supporting such a diagnosis would be "mostly subjective." (AR 437.) The Social Security Agency has acknowledged the difficulty in assessing these conditions and provided guidance for doing so. Social Security Ruling ("SSR") 03-02p. According to the Agency, the "constellation of symptoms and signs" associated with RSDS/CRPS may occur following even a very minor injury, and the diagnosis "requires the presence of complaints of persistent, intense pain that results in impaired mobility of the affected region" along with objective signs including swelling and autonomic instability (such as changes in sweating or skin temperature). The Agency cautions that "conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved." *Id.* In this case, Dr. Rottermann supported his diagnosis with objective findings including perspiration and "slight coldness" in the left hand and swelling in the bilateral upper extremities. (AR 233, 251, 267.) On remand, the ALJ must consider the complex and subjective nature of RSDS/CRPS in evaluating Dr. Rottermann's opinion.

In accordance with the foregoing, the decision is reversed. The matter is remanded to the Commissioner, who shall properly assess Plaintiff's subjective complaints and Dr. Rottermann's opinion, and otherwise proceed as appropriate.

IT IS SO ORDERED.

DATED: December 13, 2011

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE